DONLEY, Receiver, Respondent, vs. W. H. BARBER COMPANY, Appellant.

*April 4—May 1, 1934.*

For the appellant there was a brief by *Varnum & Varnum* of Hudson, and oral argument by *Robert G. Varnum.*

For the respondent there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, and oral argument by *Mr. Naujoks.*

FAIRCHILD, J. Does the claim of the respondent for motor fuel taxes have priority over the rights of appellant acquired under the attachment and execution in the action begun by appellant prior to the beginning of proceedings in which the state attempted to collect the tax due? In answering this question, the purpose and meaning of sec. 78.10 of the 1931 Statutes must be considered. We are ·not concerned with the limits to which the legislature may go in declaring a tax to be a lien upon property, but with the question as to with what this statute actually provides the state in the way of means of collecting the motor fuel tax. The legislature declared its intent to impose a tax upon the owners and operators of motor vehicles driven by combustion of motor vehicle fuel upon the public streets and highways, and provided that the tax was to be collected through the sellers and distributors of the motor fuel. The effect of this legislation was to constitute each distributor in the first instance a collector of the tax.

Sec. 78.10 of the 1931 Statutes provides for two emergencies in ·the matter of collecting the taxes: (1) In the event that the property of any person be seized by judicial process, when any person's business be suspended by action of creditors or put in the hands of a receiver, assignee, or trustee, or when any person shall have filed a petition in bankruptcy, all motor fuel taxes collected by such person but not yet paid over to the state shall be treated as preferred claims in favor of the state. (2) In the event that a suit is started in the name of the state by the attorney general, the court may issue a writ of injunction restraining the distributor from selling any gasoline "until any judgment recovered in said

suit has been paid, and the court shall, upon application therefor, appoint a receiver of the property and business of the delinquent defendant, for the purpose of impounding the same as security for any judgment recovered, and the said tax shall constitute a first and prior lien against said property."

The insertion in that section with relation to a lien of the words that "said tax shall constitute a first and prior lien against said property," confuses what would otherwise be a clear statement of procedure. If the full significance of those words standing by themselves is accorded to them, a tax lien is given upon property which the legislature up to that point had apparently never considered as included in the taxing process. It did intend to use such property as security for the payment of the judgment for the delinquency of the collector, when the judgment was recovered against him. The learned trial judge was influenced in his ruling by the explicitness of these words segregated from the rest of the section, and concluded that there was no ambiguity in the statute. In the first instance referred to in which provision is made for the establishing of the tax claim as a preferred claim, there is an apparent declaration by the legislature of its purpose to treat this as a debt and not as a tax lien. In the second instance there appears a purpose, when the words making the tax a lien are read in connection with the balance of that paragraph, to provide a lien upon such property as the distributor may own when the receiver is appointed, for the advantage of the state in making its collection. It is analogous to an attachment of the property for the purpose of securing the delinquent taxes after other liens have attached. Until the property is impounded the state has no lien and prior liens must be respected.

*By the Court.*—Judgment reversed.